The next case this morning is 52030342 People v. True arguing for the defendant appellant is J. Patrick Lee arguing for the state is Max Booth. Each side will have 10 minutes for the argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning. Good morning, sir. If you're prepared to start, we can begin now. I am. Thank you. Your Honor, our appeal here is based on two grounds. There is a conviction of Breyer W. True for speeding as a Class A misdemeanor in excess of 35 miles or in excess above the speed limit. Our argument here relates both to the sufficiency of the evidence and the propriety of the sentence. As to the former, the state obviously bore the burden of proof with respect to showing what the speed limit was. In this instance, it's not disputed that it was 45 miles per hour. However, the evidence that was presented at trial was not sufficient to establish that speeding was in excess of 30 was 35 miles an hour or except in excess of that above the speed limit. There was no direct evidence obtained from police or any other witness showing that he was speeding more than 35 miles per hour. The only evidence that was used was two expert witnesses who applied the so-called Searle equation and provided estimates. Significantly, the Searle equation assumes a direct hit or what was called a clean strike resulting in a roof vault. And so in other words, the evidence that the defendant provided with that they are immediately thrown away from the vehicle and all calculations are then based upon the distance traveled based upon that assumption. Now, in this instance, there is good reason to believe that that was not the case. Several factors were not taken into account. The decedent's legs were separated from his torso as a result of this collision. The evidence conceded that the assumption were all built in for an average sized adult with all extremities intact. There was no explanation as to why the legs and other items on constituting the debris field were found significantly closer to the vehicle than the resting place of the torso. The expert witnesses admitted that they did not know the maximum amount of time a human body could remain in contact with the vehicle in order for those results to still be valid. And there was testimony that the car had a gaping hole in the windshield with the roof crumbled up. Um, this is suggestive that this was not a clean strike scenario. And if we don't have a clean strike scenario, then the underlying assumptions for the Searle equation are insufficient. Um, well, let me ask you this, uh, with regard to the expert witness testimony, um, it was stipulated that, uh, that both state police officers were experts in this, this field of reconstruction. Is that correct? That is my understanding. And was there any, uh, was there any testimony that you put on any testimony from your own expert to counterdict what they, uh, presented? There were no counter experts offered. And did they concede to any of the points that you're bringing up now that they would not, that their initial opinion was different, uh, would be different based on the questions and points you brought out? Judge, I'm not sure that there were necessary concessions upon that point. I do believe that the testimony was that, uh, they admitted that they did not know the maximum amount of time that a human body to remain in contact with the vehicle in order for the Searle equation to still be valid. Um, judge, there were no skid marks. There were no physical evidence, no recoverable data from the vehicle to support the conclusions here. So we are resting entirely upon the sufficiency of the Searle equation. And there's simply too much evidence that a, the, the trier of fact should not have concluded that it was applicable and that it could prove beyond reasonable doubt as was the conclusion in this instance, uh, a speed of 84.83 miles per hour. And there's no evidence of breaking, is there? I do not believe so, your honor. Uh, I, I should say it not until after the collision, um, with respect to the sentence itself. Um, I think it's significant here that in the testimony offered at the sentencing hearing, there was basically focus on victim impact. And our essential argument here is that had the state believed that this was an act of negligence, that negligence had, or carelessness had caused a death that could have been charged. And the state would have bore the burden of proving beyond reasonable doubt, uh, those elements of a vehicular homicide or manslaughter, however it was charged. They chose not to do that. And accordingly, my client's carelessness or the causal connection between his actions and the decedent's death, those were not before the court. Those were not established. I think it's significant that in the state's brief, they lead off by saying, this was a needless tragedy caused by the defendant's carelessness in ignoring the road. You know, they, they use the word cause. There was no determination of causation here. Um, there was no determination of carelessness on my client's part, except to the point, to the extent that simply going in excess of the speed limit would constitute carelessness. There's no evidence of him ignoring the road. Your honors, there was no analysis here as to what this elderly gentleman was doing in the middle of the road. Frankly, there was no analysis as to whether this was someone who was intending to be hit by a motor vehicle. With that in mind, the sentence was excessive here because once you take those sort of factors out, the remaining analysis of aggravating and mitigating circumstances here for sentencing purposes just doesn't support a maximum sentence for my client. And that was 364 days, is that correct? Yes, sir. How much of that time has he served? He served all of it. I apologize. He got day-for-day credit for good behavior. I believe that a certain amount of that was credit for time already served. So he's out? I'm sorry? So he's out? He is out. So just for clarification, I thought I had read in one of the briefs that the court did not award him credit for time served, but did give him day-for-day. Am I wrong on that? Judge, if you'll give me just a moment. No credit for time served. That is correct, sir. Okay. So, Judge, he has served that entire, what was effectively a six-month sentence. Your honors, that's all. And that was all done in the county jail? Yes, sir. And what's our standard of review on a claim of an excessive sentence? The case law that I have cited expresses it as where it is abuse of discretion, and the case law will use such language as saying, manifestly disproportionate to the nature of the offense, greatly at variance with the spirit and purpose of the law. And wasn't this man's body projected 260 feet? The evidence was that at least parts of his body were. Okay, the part that went 260 feet, was that the torso or one of the legs? I believe that was the torso, your honor. And were both legs severed? That is my understanding. Mr. Lee, do you have anything further? Nothing further. Okay, you'll have time to reply. Justice Welch, Justice Moore, any further questions before we move on? No questions. No. Okay, thank you. Mr. Boos, if you need to unmute yourself. Thank you, your honor. All right. Please proceed. May it please the court, counsel. My name is Max Boos. I represent the people of the state of Illinois, the appellee in this case. First, I intend to discuss the evidence at the scene, including the expert testimony, which proved defendant's speed beyond a reasonable doubt, where the evidence must be construed in the light most favorable to the prosecution. Second, that defendant has not established an abuse of discretion where the trial court justly sentenced him to 364 days of incarceration. First, the people proved defendant's speed. Two experts testified. Their expertise in accident reconstruction was stipulated to by defendant, and the trial court found them very competent and credible. This court is required to give credibility determinations such as that great weight. Further, their testimony was not to any assumptions, was not to any guesses. They evaluated the scene. They incorporated the facts present on the ground, and they used the equation to find what defendant's speed was. No counter evidence was submitted. There was no basis to reject their testimony, which, again, was found to be credible explicitly by the court. The crash here was severe, even compared to other crashes the experts had observed, where they did have access to electronic data from the vehicles that confirmed the speed. The pictures of this scene depicted the extreme force and corroborated the high speed that defendant was traveling at. By their calculation, defendant was traveling at least 81 and up to 98 miles an hour. The calculation they used gave defendant every benefit and broke everything his way, and yet still arrived at the speeds that it did. Again, here under the standard of review, the court must construe the evidence in a light most favorable to the prosecution, and so the court should reject defendant's requests to construe any evidence in his favor, such as his claim that physical evidence suggested the victim was carried with the vehicle, particularly when the expert testimony on that point directly refuted it. Defendants challenged the expert testimony to reject the serial equations application. This case should similarly be rejected. It was identified as the gold standard in calculating a speed from a collision with decades of peer review and acceptance by the community. There was no fry hearing challenging its application in this case, and it explicitly accounted for different variables, including those raised by defendant using a range to for any discrepancies. Defendant, again, provided no expert testimony in response or basis to rebut the expert's positions. Counsel's questions are not testimony, and defendant may not smuggle contradictory testimony or expert analysis in through his question. Therefore, this court should reject any speculation about the impact of different variables of other matters that has no foundation to supply. The experts responded to defendant's questioning and maintained their calculation. For example, there a significant criminal history of driving? Yes, your honor. Defendant had 14 prior offenses, which included operating an uninsured vehicle, reckless driving, improper traffic lane usage, squealing and screeching his tires, and speeding to 15 to 20 miles per hour above the limit. That all displayed. I'm sorry, how long ago, what time frame does that encompass? Because my understanding is the defendant was what, 27 at the time this took place? 26 or 27 years old? Your honor, the speeding offense for 15 to 20 miles an hour above the limit was less than two years prior to the offense in this case. But in totality, how many of those cases stretch back to from the time he was 16 when he got the license to the time of the accident? You know, if you don't know it, that's fine. I was just curious. Not offhand, your honor. It is in pages 15 through 16 of the confidential record in the case. I know that they do include offenses ranging from 2012 through 2018. Right. I know there were screeching tires or squealing tires and some other offenses of that nature. But you're saying that the most recent speeding ticket was two years prior? Slightly less than, correct. And did he have a police supervision situation or what happened with that? Do you know? There was a guilty disposition reflected by the record. Beyond that, I can't say with certainty, your honor. Okay. All right. Go on. I'm sorry. Well, I have another question. Back to my issue on the distance. 259.97. So 260 feet is by my calculations over 86 percent of a football field in length of the torso having been projected after impact. Is that correct? I believe so. I have no reason to dispute it, your honor. That's a long way. Yes. The people don't dispute that. The experts analyzed that. They reviewed the cone of debris. Part of their analysis isn't just one physical point of evidence, but the scene as a whole. They also determined that if the body was caught by the vehicle and carried by any distance, then it would have been inside the vehicle itself. That the physical evidence is simply not consistent with a significant carriage. That point of evidence was not rebutted by any other evidence that had the proper foundation to do so. Are there any additional questions regarding issue one before I move to issue two? No, seeing none. Under the second issue, defendant has not proven his sentence was excessive. All the matters used by the court to craft defendant's sentence were entirely appropriate and well-based in the law. The seriousness of the offense is paramount in this consideration. Defendant's high speed up to 98 miles an hour in a 45 zone in the dark by his admission taking his eyes off the road with no attempt to stop or slow down, knowing of accidents in the area and the risk of hazards, including deer. Despite all of this, defendant decided to speed and ignore the road, making it an extremely serious offense as shown by the facts of the case itself. On a specific note, is there any evidence of distraction or any kind of mitigation like that? Other than speeding? His distraction was established by him stating he looked at the vehicle and thereby his eyes were not on the road. His complete unawareness of the victim until immediately before impact as he looked up to the road from where he was obviously not looking at the road. What kind of road is this? Is this a main road? Your honor, I believe it's not within a town. It's not a highly populated residential area, but the the very evidence submitted by defendant's girlfriend of there being accidents in the area, there being deer there, defendant knew he should have been more careful than this and should have been going slower and should have I don't have that information in front of me. I apologize, your honor. I believe so from the pictures on the scene though. Specific to these. I'm sorry. I'll let you go on. But with regard to where this accident occurred, the victim, was he in or near a crosswalk? Was there a stop sign in the vicinity or was he simply coming out of the off the side of the road? Because my understanding from the briefs was that the defendant testified that the victim never even looked or saw him when he stepped out in front of or when he appeared in the roadway. And that lack of awareness of the vehicle shows his speed was so excessive the pedestrian could not anticipate the vehicle being there. Certainly at the time it was. I apologize though. Your question, your honor was simply was there a crosswalk or a stop sign or was there an area around there that would have made it reasonable for him to be crossing there? Not shown within the pictures, your honor, from reviewing those. However, there was sentencing information that the victim lived nearby that he would go on these walks for up to two months prior to the events that occurred here. And so this was not a case where he just was stumbling around out in the road. This was a behavior he had done and done safely in the past. I believe Justice Moore alluded to in his question to Mr. Lee something about is there anything to suggest that maybe this gentleman intentionally stepped out in front of the vehicle? Was there any testimony with regard to anything of that nature that this could have been an intentional act on his part to end his life? With leave of the court to respond since my time is out. No, please do. There's no evidence whatsoever that this was an act of taking his own life. He was caring for his wife who passed shortly thereafter because she blamed herself. He was healthy. He was well loved by his family. And simply put, the record has no indication that that is at all germane to these facts. Do you recall what the age of the victim was in this? I'm just curious. He wasn't a young man, but I don't have a specific age in front of me. Okay. And if you like time to summarize your position and close your argument, you may do so. Thank you. Specifically, the existence of mitigating factors does not require the trial court to reduce defendant sentence from the maximum allowed. The harm defendant both caused and threatened were proper basis for aggravating his sentence. The criminal history as discussed was extensive and showed dangerousness specifically on the road. And deterrence was absolutely necessary here because defendant, despite his previous offenses and sentences, still resisted any attempts to get him to obey the rules of the road and drive in a safer manner. The other drivers on the road also needed to be communicated to that this would be taken seriously under these facts by the court. Any lower sentence would deprecate the seriousness of the offense and would be improperly reweighing the matters the trial court properly considered. As such, the court should affirm the trial court's judgment and sentence. Okay. Justice Welch, Justice Moore, any questions? No questions. Okay. Thank you, Mr. Biss. Mr. Lee, you have five minutes. Thank you, sir. A few points. There's been some reference to the idea that the, I guess the fact that the decedent's body was not intact is itself indicative of speed. And while I recognize that from a common sense standpoint, one could draw that conclusion, I think that first of all, there was no testimony focused on that topic and talking about whether dismemberment was indicative of any particular speed. I do not think that certainly the testimony was such that anyone offered testimony that this could not have happened at 79 miles per hour versus 84 miles per hour. Now, you know, judge, as to the further statements that have been made here about the decedent and his circumstances, I think this gets back to the idea that there was not evidence offered as to, at trial, as to the circumstances of him being present out in the middle of a dark road at around 5 a.m. where traffic was present. Because issues of negligence or anything other than speeding simply were not issues before the court. And again, had the state thought that they could have sustained the burden of showing that my client recklessly caused this death, the state could have charged him that way. But instead, the state chose to go with the lesser offense and the simple burden of proof, but then when it came time to sentence, the emphasis shifted toward the so-called victim, you know, the victim impact, basically. And, you know, as was raised at trial, speeding is a victimless crime in a way that a vehicular manslaughter is not. So, judge, you know, now we've got the characterization that his, and I think it was brought in at sentencing, that his wife died of a broken heart, I guess, blamed herself for this. Judge, there were, again, had my client been charged with something that involved negligence that directly implicated him for a homicide, we could have gotten into some questions of, you know, did he, what was his health status? Was his wife not already seriously ill? Were there not other circumstances that would be suggestive that he was out in the middle of the sentencing? Is that you take that out of the equation, and we have someone granted who had his share of traffic tickets, but we're talking about squealing tires, we're talking about an earlier speeding ticket, we're not talking about a severe history, we're talking about quite a bit of mitigating factors that he was full-time employed, that he was supporting a child. And, judge, there is such a thing as an abuse of discretion in these matters, and that's what has taken place here. Any questions? Justice Welch, Justice Moore? No questions. No questions. Okay. Seeing no more questions, thank you both for your arguments today. The court will take this matter into consideration and issue its ruling in due course.